# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**DANIEL GENTRY,**

### PLAINTIFF

**VERSUS**

**Calvin Thompson,** individually and in his official capacity as an officer of the New Orleans Police Department; **LaToya W. Cantrell,** individually and in her official capacity as Mayor of the City of New Orleans; **The City of New Orleans; New Orleans Police Department; Kimera Dufeal/Woods ("Woods"),** individually and in her official capacity as a police sergeant in New Orleans Police Department; **Perrin Gaines ("Gaines"),** individually and in his official capacity as a sergeant in New Orleans Police Department; **Ernest C. Luster,** individually and in his official capacity as a lieutenant in New Orleans Police Department; **J. Diaz,** individually and in his official capacity as a detective in New Orleans Police Department; **Leonard E. Bendy,** individually and in his official capacity as a detective in New Orleans Police Department; **Gary J. Lacabe,** individually and in his official capacity as a (Sergeant) police officer **Criminal District Court Parish of Orleans; Court Intervention Services; Orleans Public Defenders; Tonell Bryd,** individually and in her official capacity as Attorney employed by Orleans Public Defenders; **Robert Kazik,** individually and in his official capacity as Judicial Administrator, a department within Criminal District Court Parish of Orleans **Joyce Sallah,** individually and in her official capacity as Commissioner, employed and/ or appointed by Magistrate Judge of Criminal District Court Parish of Orleans; **Dionne S. Daigle,** individually and in her official capacity as Court Reporter employed by Criminal District Court Parish of Orleans; **SUSAN HUTSON ("Hutson"),** in her official capacity as Orleans Parish Sheriff;

### DEFENDANTS

**CIVIL ACTION NO. 25-01260**

**SECTION**

**SECT. J MAG. 3**

**MAGISTRATE**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>COMPLAINT</u>

**NOW COMES PLAINTIFF,** Daniel Gentry, for his complaint against Defendants, avers upon information and belief as follows:

## I. NATURE OF THE ACTION

1.      Daniel Gentry files this complaint under Section 1983, for the violation of his civil rights which provides a remedy to persons who have been deprived of their federal protected constitutional shields, the violation of federal law by individuals acting under the color of law and/or territorial, and violations of state law, including defamation, abuse of process, abuse of right, intentional infliction of emotional distress, malicious prosecution, general tort liability and vicarious liability against the parties made Defendants hereby and identified in paragraph 29.

2.      Plaintiff is a private citizen of New Orleans whose civil rights were violated by the conspiring defendants acting under the color of law and who has suffered severe and permanent damage to his otherwise unblemished reputation.

3.      Calvin Thompson and some of the Defendants- law enforcement officers, New Orleans Constables Office and Clerk of Court Office - violated federal and state law by filing a false public record. Defendant Thompson, purportedly acting under color of law and/or territorial cause his spurious New Orleans Police Department Incident D -05248-24, New Orleans Police Department Incident D-05315-24 filed in Orleans Parish Criminal District Court, New Orleans Police Department Incident D-05325-24, Affidavit for Search and Seizure Warrant filed in Orleans Parish Criminal District Court, Affidavit for Arrest Warrant filed in Orleans Parish Criminal District Court, New Orleans Police Department Bulletin # 146980, Item: D-05315-24 filed in Orleans Parish Criminal District Court and the false reporting to NCIC which said actions riddled with false and unsubstantiated accusations of Aggravated Assault and Aggravated Assault with a firearm, many of which were outrageous fabrications and outright lies.

4.      On June 17, 2024, Gentry was notified that his passport was denied, because NOPD reported that Gentry was wanted for a felony Aggravated Assault with a firearm.

Sometime later (same day) a task force was at Gentry door to arrest him. Gentry was booked with a misdemeanor count of Aggravated Assault.

5.    On June 18, 2024, Gentry appeared in front of Commissioner Joyce Sallah for the purpose of bail. During the bail hearing, Gentry expressed that he did not need assistance from the public defender's office, but Sallah insisted. They presented their case for their case for bail

6.    D.A REFUSED RS 14:37(A) ON 09/05/24, Unfortunately, the damage had already been done. Thompson, with the assistance of other City actors, private actors, judicial actors within the course and scope of their employment had already caused Gentry harm while trouncing on federal and state law. Gentry's civil rights were trampled as well, and his reputation was irreparably damaged without a scintilla of justification. He now seeks relief.

## II. JURISDICTION AND VENUE

7.    The first count of this action arises under 42 U.S.C. 1983. This Honorable Court has jurisdiction under 28 U.S.C. 1343.

8.    The second count of this action arises under the Fourth Amendment of the United States Constitution. This Honorable Court has jurisdiction under 28 U.S.C. 1343.

9.    The third count of this action arises under the Fourteen Amendment of the United States Constitution. This Honorable Court has jurisdiction under 28 U.S.C. 1343.

10.    The fourth count of this action arises under Louisiana law. This Honorable Court has supplemental jurisdiction under 28 U.S.C. 1367 because each of these claims are "so related to claims in the action within such original jurisdiction that [it} form[s] part of the same case or controversy under Article III of the United States Constitution.

11. The fifth count of this action arises under the Civil Racketeer Influenced and Corrupt Organizations (Civil RICO) Act 18 U.S.C. Section 1962 (c) and (d). This Honorable Court has jurisdiction under 28 U.S.C. 1331 and 18 U.S.C. 2724.

12. Venue is proper in this Honorable Court under 28 U.S.C. 1391(b)(2) because this Court is in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. "Venue for the Civil RICO claim is proper under 18 U.S.C. 1965(a).

### III. PARTIES

13. Made Plaintiff hereby, Daniel Gentry ("**Gentry**"), a person of the age of majority is a resident of the Parish of Orleans, State of Louisiana.

14. The following are made Defendants in this suit and are indebted unto the Plaintiff Gentry jointly, severally, and *in solido* for such damages as are reasonably equitable, including costs, attorney fees as allowed for by law, if any, together with legal interest thereon from the date of judicial demand until paid:

(a) **LaToya W. Cantrell ("Cantrell"),** individually and as Mayor of the City of New Orleans, who is a person of the full age of majority and a resident of the Parish of Orleans, State of Louisiana;

(b) **The City of New Orleans ("City"),** a political subdivision of the State of Louisiana, operating under its own Home Rule Charter, with its principal offices in New Orleans City Hall, 1300 Perdido Street, New Orleans, Louisiana 70112;

(c) **New Orleans Police Department ("NOPD"),** a department under the care, custody, and control of the City of New Orleans, existing under the and by virtue of the laws of the State of Louisiana and the New Orleans Home Rule Charter;

(d) **Calvin Thompson ("Thompson"),** individually and in his capacity as a (sergeant) police officer employed by the NOPD and believed to be a resident of the Parish of Orleans, State of Louisiana;

(e) **Kimera Dufeal/Woods ("Woods"),** individually and in her capacity as a police officer employed by the NOPD and believed to be a resident of the Parish of Orleans, State of Louisiana;

(f) **Perrin Gaines ("Gaines"),** individually and in his capacity as a (Sergeant) police officer employed by the NOPD and believed to be a resident of the Parish of Orleans, State of Louisiana.

(g) **Ernest C. Luster ("Luster"),** individually and in his capacity as a (Lieutenant) police officer employed by the NOPD and believed to be a resident of the Parish of Orleans, State of Louisiana.

(h) **J. Diaz ("Diaz"),** individually and in his capacity as a (Detective) police officer employed by the NOPD and believed to be a resident of the Parish of Orleans, State of Louisiana.

(i) **Christopher Jennings ("Jennings"),** individually and in his capacity as a (sergeant) police officer employed by the NOPD and believed to be a resident of the Parish of Orleans, State of Louisiana;

(j) **John/Jane Doe (Doe),**

(k) **Gary J. Lacabe ("Lacabe"),** individually and in his capacity as a (Sergeant) police officer employed by the NOPD and believed to be a resident of the Parish of Orleans, State of Louisiana.

(l) **Leonard E. Bendy ("Bendy"),** individually and in his capacity as a (Detective) police officer employed by the NOPD and believed to be a resident of the Parish of Orleans, State of Louisiana.

(m) **Criminal District Court Parish of Orleans ("Criminal Court"),** a political subdivision of the State of Louisiana, with its principal offices at 2700 Tulane Avenue New Orleans, Louisiana 70119

(n) **Magistrate Judge Honorable Juana m. Lombard ("Lombard"),** in her capacity as Magistrate Judge of Criminal District Court Parish of Orleans, elected official, of the Criminal District Court Parish of Orleans a political subdivision of the State of Louisiana, with its principal office at 2700 Tulane Avenue, Location:1st Floor, Courtroom #1, New Orleans, Louisiana 70119

(o) **Joyce Sallah ("Sallah"),** individually and in her capacity as Commissioner, employed and/ or appointed by Magistrate Judge of Criminal District Court Parish of Orleans, Section M3, and believed to be a resident of the Parish of Orleans, State of Louisiana.

(p) **John/Jane Does Nos. 1-2 (collectively "The Does"),** are as-yet unknown individuals or entities involved in the violent removal of Daniel Gentry from Magistrate Court at the request of Commissioner Sallah on June 18, 2024, and the damages to him caused thereby. They are sued in their official and/or individual capacities.

(q) **Court Intervention Services ("CIS"),** a department within Criminal District Court Parish of Orleans with its principal office at 2700 Tulane Avenue, located in the Basement, New Orleans, LA 70119

(r)   **Dionne S. Daigle ("Daigle"),** individually and in her capacity as Court Reporter employed by Criminal District Court Parish of Orleans, Section M3, and believed to be a resident of the Parish, State of Louisiana;

(s)   **Robert Kazik ("Kazik"),** individually and in his official capacity as Judicial Administrator, a department within Criminal District Court Parish of Orleans with its principal office at 2700 Tulane Avenue, located on the second (2nd) floor (Suite 200), New Orleans, LA 70119

(t)   **Orleans Public Defenders ("OPD"),** a non-profit in New Orleans with its principal office at 2601 Tulane Avenue Suite 700 New Orleans, LA 70119

(u)   **Tonell Bryd ("Bryd"),** individually and in her capacity as Attorney employed by Orleans Public Defenders and believed to be a resident of the Parish, State of Louisiana;

(v)   **Susan Hutson ("Hutson"),** individually and in her capacity as Orleans Parish Sheriff, a political subdivision of the State of Louisiana, with its principal office in New Orleans at Office 2800 Perdido St. New Orleans, LA 70119;

## IV. FACTUAL ALLEGATIONS

15.   On March 5, 2024, Plaintiff Daniel Gentry filed a *Rule of Possession of Premises* against Jelon Stewart, for the property locate at 7820 Henley Street New Orleans, LA 70126. The only matter went before the Court for trial on a Rule for Possession of Premises on March 20, 2024, for the property located at 7820 Henley Street New Orleans, LA 70126. At the trial on the Rule, the Court granted Plaintiff, *Rule for Possession* of the property and ordered Defendant, Jelon Stewart, to vacate the premises by March 27, 2024, at 6:00 p.m.

16.   Based on the *Warrant for Possession* filed on Mach 28, 2024 by Mr. Gentry, the New Orleans Constable's Office contacted Mr. Gentry on April 4, 2024, to meet Constable's deputies on April 5, 2024, at 2:00 pm, to execute the *Warrant for Possession* on Jelon Stewart at property located at 7820 Henley Street New Orleans, LA 70126. When the Constable's deputies arrived, they knocked on the door and had a conversation with Jelon Stewart's sons. The Constable deputies called Jelon Stewart at work, and a short time later Jelon Stewart arrived at the property

located at 7820 Henley Street New Orleans, LA 70126.  Jelon Stewart provided a receipt from March 1, 2024, the Constable's deputies asked Gentry if the signature on the receipt was his (Mr. Gentry), he advised that it was his (Mr. Gentry) signature. Mr. Gentry explained that the receipt from March 1, 2024, before Gentry filed Plaintiff's Petition for Rule for Possession.  The Rule for Possession was filed on March 5, 2024.

17.    Upon information and belief, coupled with additional information, Defendants Alexander, Boissiere, Eddington, and Snipes deprived Mr. Gentry of the right to his private property, to a *Warrant for Possession*, and to due process.

18.    New Orleans Incident Report D-05248-24 reflects that Gentry summoned the NOPD, to 7820 Henley Street New Orleans, LA 70126, on April 6, 2024, to get them to execute the Warrant for Possession of Premises and to address criminal damage to the property located at 7820 Henley Street New Orleans, LA 70126.  A copy of said NOPD Incident Report is attached hereto as **Exhibit "A"**.

19.    According to NOPD Incident Report D-05248-24 reflects, Defendant Calvin Thompson was dispatched to 7820 Henley Street New Orleans, LA 70126 where Thompson purportedly interviewed Jelon Stewart (tenant), Travell Williams, and Daniel Gentry.[1]

20.    Upon information and belief, coupled with additional information Defendant Perrin and Defendant Alfonzo were also dispatched to the scene. Defendants Thompson, Gaines or Alfonzo are not detectives.

21.    NOPD Incident Report D-05248-24 reflects that during the interview with Travell Williams, Williams advised Thompson *"around 6:30 am he observed the lights at the residence*

---

[1] The assignment of Defendant Calvin Thompson to take statements have come into question because, other information obtain through a public records request from the City of New Orleans reflects Sergeant Perrin Gaines was dispatch to this call (NOPD Incident D-05248-24).

*were off. Mr. Williams stated he relocated outside of the residence, observing the tires flat on his mothers 2010 white Dodge Charger license plate "642 CTN", VIN: 2BKA43G36H312230. Mr. Williams stated that he observed the owner of the property, Mr. Daniel Gentry, sitting in his vehicle across the street from the residence. Mr. Williams stated on April 5, 2024, Mr. Gentry came to residence with two unknown subjects attempting to remove Ms. Jelon Stewart and her family from the residence."*

22.   These statements are false and show actual malice on behalf of Defendant Thompson.   Defendant Thompson can produce no evidence to substantiate these spurious allegations. Upon information and belief, this is not a true account of Mr. William statement.

23.   NOPD Incident Report D-05248-24 reflects during the interview with Jelon Stewart, Stewart advised Thompson *"Ms. Stewart stated Sheriff Constables came to her residence around 2:00 pm on Apil 5, evict from the residence. Ms. Stewart stated that constables did not remove her from the residence due to being contacted by a judge from Section C of Civil District Court.  Ms. Stewart stated the judge explained to the constables she could not be removed from the property due to Mr. Gentry accepting payment from Ms. Stewart.  Ms. Stewart stated she has a court date scheduled for eviction on Monday, April 8, 2024.  Ms. Stewart stated she is being constantly harassed by Mr. Gentry.  Ms. Stewart stated Mr. Gentry comes to the residence and turns on the power to the residence via electricity panel box on the outside of the home."*

25.   NOPD Incident Report D-05248-24 reflects during the interview with Jelon Stewart, Stewart advised Thompson "

26.   NOPD Incident Report D-05248-24, reflects that Officer Thompson states that "Officer Thompson and sergeant Gaines, while at location observed Mr. Gentry get into a verbal

argument with an unknown male subject later identified as Mr. Richard Carter (B/M DOB 7-1-1983)".

27.     Upon information and belief, this statement is patently false and shows malice on the part of Calvin Thompson and his reckless disregard for the truth. Coupled with other information which shows that Mr. Gentry asked Mr. Richard Carter what the Fuck are you talking about, after Richard Carter made the statement "Don't play with me son don't play with me, I aren't tell you nothing, don't even look in my face don't tell me nothing, you with the wrong one". After which, Mr. Carter shows Mr. Gentry a concealed handgun in front of the police officers. Mr. Gentry took this as a threat and was in fear of his safety.[2] [3]

28.     NOPD Incident Report D-05248-24, reflects that Officer Thompson states that "Mr. Carter stated Mr. Gentry was making intimidating facial gestures towards him. Mr. Carter stated to Mr. Gentry. "That he was not the one to play with". Mr. Carter began giving the address to his residence to Mr. Gentry, stating he is welcome to come by if he wants trouble. Mr. Carter stated to Mr. Gentry he not really like".

29.     Upon information and belief, this statement is patently false and shows malice on the part of Calvin Thompson who acted in reckless disregard for the truth. Mr. Richard is not listed in NOPD Incident Report D-05248-24 as a person being interviewed and other information suggests that Mr. Carter was not interviewed at any point in the investigation.

30.     NOPD Incident Report D-05248-24, reflects that Officer Thompson states that "Mr. Gentry stated to Mr. Carter that, "he better check his jacket he is about whatever", Mr. Gentry

---

[2] Thompson conveniently left out of his NOPD Incident Report D-05248-24 the fact that Mr. Richard Carter was in possession concealed gun (Glock 17), which was later transform into a rifle via an attachment and used in aggravated assault against Gentry.

[3] Mr. Carter was not on the lease and did not reside at 7820 Henley Street New Orleans LA 70126. Mr. Gentry did not know Mr. Carter prior to this Incident.

engaged in a verbal argument with Ms. Stewart and Mr. Williams, referring to her as a "broke bitch who needs to pay her rent".

31.     Gaines escalated tensions at the scene of the incident when he told Ms. Jelon Stewart that she was allowed to take a picture of Mr. Gentry license plate.  As Ms. Jelon Stewart took a picture of Mr. Gentry license plate, Stewart makes the statement "You think aint got have nobody" confirming that Mr. Carter was there to cause harm to Mr. Gentry. Mr. Carter did not stay at the property. Gentry did not tell Mr. Carter "Mr. Gentry stated to Mr. Carter that, "he better check his jacket he is about whatever".[4]

32.     NOPD Incident Report D-05248-24, reflects that Officer Thompson states that "Officer Thompson, Officer Roberto Alfonzo, unit 723B, Sergeant Perrin Gaines Unit 720B separated the parties.".

33.     Upon information and belief, the above statement is false and made in reckless disregard for the truth. Officer Thompson, Officer Roberto Alfonzo, Sergeant Perrin Gaines, and Mr. Carter had to hold Ms. Stewart, Mr. Williams, and a third unknown son back from attacking Gentry.

34.     NOPD Incident Report D-05248-24, reflects that Officer Thompson states that "Sergeant P. Gaines advised neither party would be arrested due to the threatening comments made on scene. He advised both parties if anything escalated past the argument on scene police action will be taken".

35.     This statement is false and shows actual malice on the part of Officer Thompson. Officer Thompson acted in reckless disregard for the truth. Upon information, belief and based on

---

[4] While on the scene Gentry was threatened multiple times by Richard Carter who was summoned to the scene by Jelon Stewart.  Richard Carter came to scene armed with a gun, which was later discovered to be a Glock 17.

the sequencing of the statements in Officer Thompson's official Incident report, it's clear that Officer Thompson was biased against Gentry.

36.    NOPD Incident Report D-05248-24, reflects that Officer Thompson states that "Sergeant P. Gaines, unit 720B advised Mr. Gentry [not] to return to the residence until after he has made contact with the courts and received a ruling on the eviction".

37.    Once again Officer Thompson makes a deliberate misrepresentation of the facts and shows actual malice on the part of Officer Thompson. Furthermore, it shows that Officer Thompson acted in reckless disregard for the truth.  Mr. Gentry had already legally evicted Ms. Stewart and Officer Thompson had a copy of the eviction order.[5]

38.    NOPD Incident Report D-05248-24, reflects that Officer Thompson states that "Sergeant P. Gaines Officer Thompson, Officer Alfonzo observed Mr. Gentry take a picture of Mr. Carter license plate.".

39.    Finally, we get to a true statement, but still a deliberate misrepresentation of the facts. Mr. Gentry did indeed take a picture of Mr. Carter's license plate. Mr. Richard Carter continued to tell the police officers that he was going to beat Mr. Gentry up and he was ready to go to jail. Even asking the Police officers "can we get our squabble on and then you can take us to jail". Because of the continued threats, Mr. Gentry feared for his life and subsequently took a picture of Mr. Richard Carter's license plate which was parked in Mr. Gentry's driveway. Mr. Gentry did not speak to the other party.[6]

40.    Gentry contends that Richard Carter continuously made threats of violence towards Gentry in front Defendants Thompson, Gaines, and Alfonzo putting Gentry in fear of

---

[5] A copy of Judgment for Rule of Possession is attached to NOPD Incident Report D-05248-24. Attached hereto as **Exhibit "A"**.
[6] Please note most of the threats made towards Mr. Gentry were omitted from the official report.

receiving a battery. Defendants Thompson, Gaines, and Alfonzo had a duty as police officers to intervene. Defendants Thompson, Gaines, and Alfonzo had a reasonable opportunity to intervene. Defendants Thompson, Gaines, and Alfonzo failed to intervene.[7]

41.    NOPD Incident Report D-05248-24, reflects that Officer Thompson states that "Officer Alfonzo provided an NOPD item slip to Mr. Gentry and Ms. Stewart.

42.    Gentry was provided with a form 26 NOPD and an item number for criminal damage signal 56, by the time he received the incident report it was changed to signal 21 miscellaneous.[8]

43.    NOPD Incident Report D-05248-24 reflects that Officer Thompson states that "Sergeant P. Gaines interviewed Ms. Stewart with his back to Mr. Gentry, as Mr. Gentry relocated from the residence Ms. Stewart and Mr. Williams observed Mr. Gentry make gun gestures with his fingers in their direction, as he drove off from the location".[9]

44.    This statement is false and shows actual malice and disregard for the truth on the part of Thompson and Gaines. Upon information and belief, Gaines was not interviewing anyone, at the time these allegations were made.

45.    NOPD Incident Report D-05248-24 reflects that "Officer Body worn cameras were activated during the entire incident."

46.    On August 19, 2024, at 7:55am, Petitioner received a response to his request, which stated the following;

"NO BWC

---

[7] Defendants Thompson, Gaines, and Alfonzo shows a deliberate indifference to Gentry's safety that the Constitution forbids.

[8] After Gentry left the scene, Gaines (Supervisor) directed subordinate Thompson to write the report as a 21 miscellaneous.

[9] It was Gaines (Supervisor) who fabricated this statement and directed subordinate Thompson to add it to the report.

The City does not have records responsive to your request.
On behalf of the custodial department(s), our office has responded to your request and considers it closed.

Law Department
City of New Orleans
1300 Perdido St., Ste. 5E03
New Orleans, LA 70112
504-658-9800"

47.     NOPD Incident Report D-05248-24 reflects that Lieutenant Ernest C. Luster, a supervisor with NOPD, signed off on NOPD Incident No. D-05248-24.

48.     By drafting, approving and publishing NOPD Incident Report D-05248-24, without any investigation or inquiry of Gentry's account, Defendant Luster and Gaines, aided and abetted Defendant Thompson's duplicity in fabricating a false police report.

49.     Prior to NOPD making Incident No. D-05248-24 available to the public by obtaining a copy at NOPD headquarters, defendant Luster presumably with more experience than Defendants Thompson, Gaines, and Alfonzo had the opportunity to clarify Defendant Thompsons statements and yet failed to do so further contributing to the dissemination of false and defamatory statements about Gentry.

50.     In response to Defendant Thompson fabricated NOPD Incident Report D-05248-24, Gentry filed a complaint with the Public Integrity Bureau of the NOPD. Gentry's compliant is hereto attached as **Exhibit B**.

51.     Gentry left the scene of NOPD Incident D-05248-24 at approximately 9:34 AM, Richard Carter left the scene of NOPD incident D-05248-24 approximately 9:31 AM.

52.     At approximately 9:43 am, Gentry relocated back to the scene of D-05248-24 to report that Richard Carter had pointed a rifle at Gentry. Thompson took the report, gave Gentry

another Form 26 for a 37(A) aggravated assault presumably against Mr. Carter. The NOPD Incident D-05315-24 is hereto attached as **Exhibit C**. [10]

53.    NOPD Incident Report D-05315-24 reflects that during the interview with Gentry, Gentry *"The victim stated he was traveling down Hayne Blvd leaving his rental property at 7820 Henley Street when the wanted subject, later identified as Richard Carter (B/M DOB 7-1-1983 5"11 Height, 180 Weight, bald, brown eyes), pulled up to his passenger side window in a black Jeep four door SUV. The victim stated the wanted subject then pointed a black rifle at him. The victim immediately fled the location to get away from the wanted subject and relocated back to 7820 Henley Street. The victim then observed Thompson in the area of Wales Avenue, Henley Street and flagged him down for the report. The victim relayed the subject he got into a verbal argument with at his rental property pointed a rifle at him."*

54.    Upon information and belief this statement is made with malice and written in reckless disregard of the truth. This statement is a clear misrepresentation of Gentry's statement. Moreover, Gentry asserts this is not his (Gentry) statement. [11]

55.    NOPD Incident Report D-05315-24 reflects that "Officer Thompson was present on 7820 Henley when Mr. Carter and Mr. Gentry had to be separated, due to verbal argument at the location."

56.    Upon information and belief this statement is made with malice and in reckless disregard for the truth.

---

[10] After taking Gentry's statement for the aggravated assault (NOPD Incident D-05315-24), Thompson asked Gentry to follow him to 7th district police station, so he can get a copy of Judgment, for Rule for Possession to attach to NOPD Incident D-05248-24.

[11] Gentry's statement is conveniently missing from Defendant Thompson's BWC, which Thompson affirms in a public record that his "Body Worn Camera was activated during the entire investigation".

57.    NOPD Incident Report D-05315-24 reflects that Officer Thompson stated "Officer Thompson did not have personal information for Mr. Carter, was provided with a license plate by Mr. Gentry. "Officer Thompson ran the license plate provided by Mr. Gentry via Castnet, it came back to a Darlene Traverion and observed her address was 78(redacted) Means Ave.  Officer Thompson ran Ms. Traverion EPR, under item number I-23816-22 was able to verify the identity of Mr. Carter by OMV photo."

58.    Upon information and belief this statement is inconsistent with other public records (Affidavit for Arrest Warrant), which was used in judicial proceedings.  Moreover, did Thompson find Richard Carter with good old-fashioned police work or was Thompson called to investigate a 21?

59.    NOPD Incident Report D-05315-24 reflects that Officer Thompson stated "Officer Thompson interviewed Mr. Richard Carter sometime later at 78(redacted) Means Avenue. Mr. Carter was detained by Officer Thompson per P. Gaines, Unit 720B, placed him in double locking properly fitted handcuffs to the rear.  Officer Christopher Jenning Unit 733B read Mr. Carter his Miranda Rights he was placed in the rear of Unit 20039".

60.    Upon information and belief this statement is inconsistent with other public records (Affidavit for Arrest Warrant), which was used in judicial proceedings.

61.    NOPD Incident Report D-05315-24 reflects that "On Saturday, April 6, 2024, at 11:45 am, Police Officer Calvin Thompson, Manning Unit 719B of the Seventh District, received a call via New Orleans Police Department Dispatch, to investigate a 21 which was later determined to be related to a previous 37, at 7840 Means Avenue."

62. This statement is inconsistent with another narrative used in other public records; but not limited to the Affidavit for Arrest Warrant, which was used in judicial proceedings. This statement is also inconsistent with the statement Thompson made in paragraph 55.

63. NOPD Incident Report D-05315-24 reflects that "Sometime later Mr. Carter was released from handcuffs and police custody per Sergeant P. Gaines, Unit 720B. Sergeant P. Gaines, 720B advised Mr. Carter an arrest warrant will be issued for him upon being released. Sergeant P. Gaines advised Mr. Carter he may be arrested at a later date."

64. This statement is inconsistent with other information within the same report and other public records with indicates that Richard Carter was arrested at 12:15pm on April 6, 2024. Richard Carter was not injured in custody, did not died while in custody and the arrestee was not armed at time of arrest.

65. NOPD Incident Report D-05315-24 reflects that "Sergeant P. Gaines instructed Officer Thompson to issue an arrest warrant for Richard Carter".

66. Upon information and belief, Richard Carter has never been arrested in connection with this arrest warrant.

67. NOPD Incident Report D-05315-24 reflects that Sergeant P. Gaines instructed Officer Thompson to issue an arrest warrant for Daniel Gentry.

68. Upon information and belief, this action was made with malice and a reckless disregard for the truth. Defendant Gaines is not a detective and by his (Gaines) own admission, he (Gaines) had no proof of Gentry committing any crime. Gentry did not fit the description Richard gave during his 911 call. Moreover, witness statement contradicts Richard Carter's statement

which was favorable to Gentry but left out of the NOPD Incident Report D-05315-24 in violation of Gentry's constitutional shield. [12]

69.     NOPD Incident Report D-05315-24 reflects that "Upon arrival Officer Thompson interviewed Mr. Richard Carter (B/M DOB 7-1-1983) who stated he was traveling southbound on Hayne Boulevard to his residence at 78(redacted) Means Avenue, when he observed Mr. Daniel Gentry (B/M DOB 7-1-1983, 6"1 Height, Weight 190, black hair, brown eyes) turning around in the middle of Hayne and began following him.

70.     Upon information and belief, this statement is a misrepresentation of the truth. Richard Carter said he was at the store when he seen Gentry drive pass. Richard Carter stated that Gentry had passed his street and was at Read and Hayne. This statement was made with malice and reckless disregard for the truth.

71.     NOPD Incident Report D-05315-24 reflects that "The victim stated he made a right turn on Means Avenue and pulled up to his residence, as he exited the vehicle, he observed the wanted subject in a dark colored infinity SUV, drive past him pointing a black handgun at him. The victim stated he pointed his firearm in the direction of the wanted subject driving past him. The victim stated he was in fear for his life that the reason he pointed his firearm at the wanted subject. The victim stated after the incident he was outside talking to his neighbor, about thirty minutes later he observed the wanted subject driving up Means Avenue at a high-rate speed ducking down in the vehicle."

72.     Gentry left the scene of NOPD Incident D-05248-24 approximately at 9:34 AM. Gentry reaches Read and Hayne at approximately 9:38 am, when Gentry observes Richard Carter behind him. Gentry was back at the scene of NOPD Incident D-05248-24 approximately at 9:43

[12] Brady v. Maryland, 373 U.S. 83 (1963), The Supreme Court held that suppressing exculpatory evidence violates the defendant's Fourteenth Amendment right to due process.

AM, giving a statement concerning the aggravated assault. Defendant Thompson asked Gentry to follow him to the 7th district station to get a copy of the judgement for rule of possession. Defendant Thompson and Gentry left the scene of NOPD Incident D-05248-24 approximately at 9:53 AM. The distance from 7820 Henley St, New Orleans, LA 70126 to the New Orleans Police Department 7th District station at 10101 Dwyer Rd, New Orleans, LA 70127 is 4.4 miles. This drive would take approximately 8 minutes. Upon information and belief, Gentry was presumably with Defendant Thompson until approximately 10:19 am.

73.    NOPD Incident Report D-05315-24 reflects that "Officer Thompson authored and executed a search warrant at Mr. Richard Carter 78(redacted) Means Avenue Apartment C, stated at 1:36 pm, ended at 1:39 pm, supervised by Sergeant P. Gaines, Unit 720B".

74.    Defendant Thompson secured this search warrant using a fabricated statement presented as Gentry's statement. The statement used in the search warrant was not Gentry's statement. [13]

75.    NOPD Incident Report D-05315-24 reflects that "Officer Thompson confiscated a black Glock 17 handgun serial number "AEGG541", one magazine, 12 live ammo rounds, one black gun attachment. Officer Thompson observed the confiscated items on Mr. Carters bedroom on his bed."[14]

76.    NOPD Incident Report D-05315-24 reflects that "Officer Thompson issued an Arrest Warrant for Mr. Carter and Mr. Gentry that was verified by NCIC Tech Johnson."

---

[13] Gentry's statement was not recorded on Defendant Thompson's Body Worn Cam, which being in question the validity of the statement use to secure search warrant. Defendant Thompson states in NOPD Incident Report that is Body Worn Cam was active the entire time during the investigation.
[14] The black attachment was used to transform the Glock 17 from Incident D-05248-24, into a rifle from Incident D-05315-24 and/or Incident D-05325-24. Moreover, the evidence found corroborates Gentry's allegation.

77.    Presumably, Defendant Thompson reported to NCIC that Gentry was wanted for Aggravated Assault with a firearm – LA R.S. 37.4, despite writing NOPD Incident Report D-05315-24 for an Aggravated Assault – LA R.S. 37(A).

78.    NOPD Incident Report D-05315-24 reflects that "Detective J. Diaz, Unit 1735 was notified of the incident". NOPD Incident Report D-05315-24 Furter reflects that Defendant Diaz was the assigned Detective.

79.    Defendant Diaz was contacted by Defendant Thompson, Defendant Diaz who is the detective asked Defendant Thompson "what are we doing with it". Defendant Thompson responded, "Mr. Carter is being arrested, and a warrant is going to be issued for Mr. Daniel Gentry per 720" Defendant Diaz response was "sounds good I am good with it".[15]

80.    Defendant Diaz was the detective assigned to NOPD Incident Report D-05315-24. Defendant Diaz approved the arrest of Gentry, without any investigation or inquiry into Gentry's account or any examination of the totality of the circumstances and facts, Defendant Diaz, aided and abetted Defendants Thompson, Doe, and Gaines in violating Gentry's constitutional shield.

81.    Upon information and belief, Defendant Gaines get out his car and advised Doe via cell phone that "he got it". Richard Carter was released from custody.

82.    NOPD Incident Report D-05315-24 reflects Officer Thompson states "Officer Body Worn Camera was activated during the entire [investigation]."

83.    Upon information and belief, this statement is false and shows actual malice on the part of Defendant Thompson. Gentry statement is missing from Thompson's body worn camera along with other key moments during the investigation. Upon information and belief, Defendant's

---

[15] Upon information and belief, 720 refers to Defendant Gaines Unit ID.

Thompson, Gaines, Jennings, turn off cameras when conspiring against Gentry and to hide other illegal actives.

84.    NOPD Incident Report D-05315-24 reflects that Lieutenant Ernest C. Luster, a supervisor with NOPD, signed off on NOPD Incident No. D-05315-24.

85.    By drafting, approving and publishing NOPD Incident Report D-05315-24, without any investigation or inquiry of Gentry's account, Defendant Luster and Gaines, aided and abetted Defendant Thompson's duplicity in fabricating a false police report.

86.    Prior to NOPD making Incident No. D-05315-24 available to the public by obtaining a copy at NOPD headquarters, defendant Luster presumably with more experience than Defendants Thompson, Gaines, Jennings, and Diaz had the opportunity to clarify Defendant Thompsons statements and yet failed to do so further contributing to the dissemination of false and defamatory statements about Gentry.

87.    In response to Defendant Thompson fabricated NOPD Incident Report D-05315-24, Gentry filed a complaint with the Public Integrity Bureau of the NOPD. Gentry's compliant is hereto attached as **Exhibit D.**

88.    On Monday June 17, 2024, Gentry was arrested by members of the New Orleans Police Department, FBI New Orleans, Louisiana State Police, East Bank Levee acting under the color of state law.

89.    NOPD Incident D-05315-24 (Supplemental) reflects "On Monday, June 17, 2024, members of the New Orleans Police Department, FBI New Orleans, Louisiana State Police, East Bank Levee Police took part in Operation Clean House. As part of the initiative the officers had the occasion to locate and arrest Daniel Gentry, Black male, Date of Birth: June 26, 1977, for an

outstanding arrest warrant for aggravated assault with a firearm under open item number D-05315-24. The following are the circumstances which led to the arrest."[16]

90.     NOPD Incident D-05315-24 (Supplemental) reflects "On Monday, June 17, 2024, members of the Operation Clean House Multi Jurisdiction Task Force relocated to 11249 Notaway Lane in an attempt to locate wanted subject Daniel Gentry. Agents knocked on the door where they met with Daniel Gentry's spouse who advised he was walking to the front of the residence in order to surrender himself. Daniel Gentry relocated to the front door of the residence where agents placed him under arrest for the outstanding warrant. Gentry was placed in double lock handcuffs which were checked for proper fit and advised of Miranda Rights. The arrest warrant confirmed outstanding by NCIC Operator Krider."[17]

91.     Upon information and belief Agents acting under the color of state and local law covered Gentry's doorbell camera in violation of Gentry's Constitutional Shield.

92.     NOPD Incident D-05315-24 (Supplemental) reflects "Daniel Gentry was transported to Orleans Parish Justice Center by New Orleans Police Department Seventh District Unit 711A A. Brucken."

93.     On June 18, 2024, was Gentry's First Appearance in Magistrate Court section M3, with Commissioner Joyce Sallah, for a bond hearing for the one count of (misdemeanor) Aggravated Assault - R.S. 37(A). The Court appointed The Orleans Public Defenders Office to represent Gentry in this matter, despite his objection.

94.     Upon information and belief, Defendant Bryd was representing The Orleans Public Defenders Office. Gentry asserts that Defendant Bryd and an unknown Jane/John Doe employed

---

[16] This statement comes into question as the Arrest Warrant reflects that Gentry was wanted for Aggravated Assault R.S. 37 (A) (misdemeanor) and Aggravated Assault with a firearm is R.S. 37.4 (felony). Moreover, Gentry was booked with Aggravated Assault R.S. 37 (A) (misdemeanor).

[17] This action comes into question as to the method used to locate Gentry for this misdemeanor warrant.

with the Court Intervention Services improperly obtained criminal history on Gentry, which included an arrest/conviction from 25 years ago in Jefferson Parish.[18] During the bail hearing arguments, Defendant Bryd illegally disclosed that private information.[19] Gentry immediately fired Defendant Bryd and tried to present his own case, when Defendant Sallah, instructed Defendants DOES to remove Gentry from the Court room.[20] Gentry did not get a chance to start his argument therefore was denied due process.[21]

95.    The Court found probable cause and Gentry's bond was set for $50,000.[22] Upon information and belief, Defendant Sallah's actions were done in malice and in a reckless disregard for the U.S. Constitution. The bail bond set at $50,000 for a misdemeanor and the fact Gentry, who was assessed as a level one flight risk, was excessive and in violation of Gentry's constitutional shield. Moreover, the Court ordered a non-domestic stay away order against Gentry, preventing Gentry from engaging in certain constitutionally protected and basic activities and patronizing any establishment Richard Carter was present.

---

[18] Gentry was given a first-time offenders pardon.

[19] It's worthy to note that when the DA's Office presented their arguments and made no mention of Gentry's criminal history.

[20] Gentry while handcuffed and in shackles, was violently and physically remove from the court room.

[21] Gentry wanted to argue that he was arrested on a felony warrant but a misdemeanor charge. Secondly, he was the one who initiated the report against Richard Carter. Thirdly, that application for arrest warrant was riddled with false and unsubstantiated accusations, including aggravated assault, many of which were outrageous fabrications and outright lies. Furthermore, Gentry wanted to challenge the probable cause determination.

[22] It's worthy to note that Defendant Sallah approved the application for arrest warrant.

## V. LAW AND ARGUMENT

### A. COUNT 1: VIOLATIONS OF 42 U.S.C. § 1983

96.    "To state a claim for relief in an action brought under 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation of a right was committed under color of state law."[23]

97.    Defendants Thompson, Gaines, Diaz, Luster, NOPD, City, Woods, Sallah, Does, CIS and Bryd acting individually under the color of state and local law, violated federal law and deprived Plaintiff Gentry of the protections guaranteed to him under the Constitution and the laws of the United States.

**Failure to Intervene:**

98.    Richard Carter made multiple threats toward Daniel Gentry, intentionally placing him in reasonable apprehension of receiving a battery.  Gentry repeatedly requested protection from the police officers present at the scene. Notably, Richard Carter was summoned to the location (NOPD Incident D-05248-24) by Jelon Stewart and arrived armed with a Glock 17. Minutes after departing, Carter—by means of an attachment—converted his Glock 17 into a rifle and again assaulted Gentry (NOPD Incident D-05315-24).

99.    Defendant Officer Thompson had a clear duty to intervene and possessed a reasonable opportunity to do so. However, Defendant Thompson failed to act. Furthermore, the failure to properly document both the threats against Gentry and the weapon Carter possessed demonstrates malice and a reckless disregard for the truth.

100.    Defendant Thompson's inaction constituted a violation of Gentry's rights under the Fourteenth Amendment of the United States Constitution, which guarantees all individuals

---

[23] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130 (1999)

equal protection under the law. Likewise, Defendants Gaines and Alfonzo, as police officers on the scene, had a similar duty and reasonable opportunity to intervene. They, too, failed to act and intervene. Plaintiff Gentry now sues Defendants Gaines, Thompson, NOPD, and City, under 42 U.S.C. § 1983.

**Unlawful Seizure**

## B. COUNT 2: VIOLATIONS OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

101. The allegations contained in Paragraphs 1-  herein are realleged and incorporated by reference, as fully set forth herein.

102. Defendants Thompson, Gaines, Jennings, Diaz, Luster, Doe, Woods and NOPD violated Plaintiff Gentry's Fourth Amendment right to unreasonable search and seizures by improperly obtaining a warrant by making false statements and means of omissions that created a falsehood in the warrant affidavit.

## C. COUNT 3: DEFAMATION

103. The allegations contained in Paragraphs 1-95 herein are realleged and incorporated by reference, as fully set forth herein.

106. Defendant Thompson falsely accused Daniel Gentry of criminal conduct and published these falsehoods to the public at large.

107. These baseless allegations made and disseminated by Thompson and Gaines are severely injurious to Gentry's reputation as a citizen of New Orleans. Under Louisiana law, there are four elements necessary to establish a claim for defamation:

(a) "a false and defamatory statement concerning another;"

(b) "an unprivileged publication to a third party,"

(c) "fault (negligence or greater) on the part of the publisher," and

(d) "resulting injury."[24]

108.    "In Louisiana, defamatory words have traditionally been divided into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning."[25]

109.    "Words which **expressly or implicitly accuse another of criminal conduct,** or which by their very nature tend to **injure one's personal or professional reputation,** even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se."[26]

110.    "When a plaintiff proves publication of words that are defamatory per se, falsity and malice (or fault) are presumed, but may be rebutted by the defendant. Injury may also be presumed."[27]

111.    Cantrell's statements included that Breaud engaged in a "pattern of stalking, harassing, and intimidating Cantrell and her family," which is defamatory per se as it expressly accuses Breaud of the crime of stalking and by it's very nature injures Breaud's personal and professional reputation.

112.    Because Breaud's statements were defamatory *per se,* falsity, malice and injury are presumed.[28]

113.    By making false and defamatory statements concerning Breaud's actions in pleadings filed into the public record, Defendants Cantrell and Davis have made unprivileged publications to multiple third parties.[29]

---

[24] *Kennedy v. Sheriff of E. Baton Rouge,* 05-1418 (La. 7/10/06) 935 So.2d 669, 674.

[25] *Kennedy,* 935 So. 2d at674-75;  Costello v. Hardy, 03-1146 (La. 1/21/04), 864 So. 2d 129,140

[26] Costello, 864 So. 2d at 140.

[27] Kennedy, 935 So. 2d at 675.

[28]

[29] See Costello, 864 So. 2d at 146.

114.    Defendants Thompson and Gaines's false statements have irreparably damaged Gentry's reputation as an upstanding citizen in the City of New Orleans.

115.    These statements have jeopardized Gentry's ability to garner the trust of his potential real estate clients and have thereby jeopardized her livelihood.

116.    Further, these false statements are obstacles to any public office or position to which Gentry may aspire.

117.    Gentry has incurred significant expenses in defending himself against these false and baseless claims.

## D. COUNT 4: ABUSE OF PROCESS

118.    The allegations contained in Paragraphs 1-78 herein are realleged and incorporated by reference, as fully set forth herein.

119.    Defendants Thompson and Gaines willfully abused the legal process by seeking and obtaining an Arrest Warrant against Gentry for an ulterior purpose.

120.    Specifically, Cantrell sought the Order of Protection/TRO against Breaud purportedly to protect Cantrell and her family from stalking, harassment, intimidation, when, in fact, no such conduct was occurring or was ever threatened.

121.    Because no such conduct was occurring or threatened, Defendant Gentry was motivated by ulterior purposes, including, but not limited to:

(a)    to oppress, damage, humiliate, vex, and/or spite Gentry;

(b)    to make an example of Gentry as what happens when you expose Defendant Thompson and Gaines actions; and

(c)    to punish Gentry for exercising her constitutionally protected rights under the Louisiana and United States Constitutions;

122.    Defendant Thompson, motivated by a perceived wrong, chose to wield a legal shield as a sword. Thompson sought and obtained a result that was not proper under the law and did so knowingly. She maliciously misused and misapplied this process.

123.    To this end, Defendant Cantrell, under false pretenses, improperly obtained private personal information about Breaud from the NOPD, which was in turn provided to Cantrell in violation of federal and state laws and to abet Cantrell in her tortious acts toward Breaud.

124.    Gentry was severely injured by Thompson's abuse of process, financially and emotionally: he was forced to defend himself against this abuse of process and incur legal fees, divert resources from his own legal business, and endure the accompanying trauma.

125.    Gentry's claim for abuse of process is not premature and has fully ripened because there was bona fide termination in favor of Gentry, which was refusal by The New Orleans DA Office.

### E. COUNT 5: ABUSE OF RIGHT

126.    The allegations contained in Paragraphs 1-95 herein are realleged and incorporated by reference, as fully set forth herein.

127.    Defendant Thompson committed an abuse of right when she carried out the above identified conduct including, but not limited to, drafting a false NOPD Incident Report D-05248-24 and NOPD Incident Report D-05315-24 seeking Application for Arrest Warrant against Gentry.

128.    With respect to Defendant Thompson's abuse of these rights:

    (a)    her predominant motive for the exercise of these rights was to cause harm;

    (b)    there was no serious or legitimate motive for the exercise of these rights;

(c)  the exercise of these rights violated moral rules, good faith, and elementary fairness; and

(d)  the exercise of the rights was for a purpose other than for which they were granted.

129.  Upon information and belief, Defendants Gaines, Luster and other named and unnamed defendants knowingly and willingly assisted Defendant Thompson in committing this abuse of right;

130.  Gentry's claim for abuse of right is not premature and has fully ripened.

## F. COUNT 6: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

131.  The allegations contained in Paragraphs 1-95 herein are realleged and incorporated by reference, as fully set forth herein.

132.  Thompson committed Intentional Infliction of Emotional Distress ("IIED") against Gentry by seeking and obtaining an Arrest Warrant against Gentry on false and defamatory grounds and by continuing to pursue and promulgate these claims in the public arena despite knowing they were false.

133.  Thompson's above-described conduct, including, but not limited to, his lodging of patently false and defamatory criminal allegations to pursue an Arrest Warrant, was extreme and outrageous.

134.  Gentry has suffered and will continue to suffer severe emotional distress from these groundless assaults on his character.

135.  At the very least, Thompson knew that her false and defamatory statements against Gentry were likely or certain that Gentry would suffer emotional distress as a result of his conduct. However, as demonstrated by Thompson's pattern of behavior, it is apparent that Thompson intended for Gentry to suffer severe emotional distress.

136.    Upon information and belief, and as described above, Defendants Gaines, Woods, Daiz, Luster and other unnamed John/Jane Defendants, knowingly and willingly assisted the exaction of Thompson's retribution against Plaintiff Gentry.

137.    Accordingly, Thompson, and Gaines liable for the IIED against Gentry in relative shares to be determined in accordance with either: (a) comparative fault under La. Civ. Code art. 2323; or (b) as solidary or joint tortfeasors under La. Civ. Code art. 2324.

## G. COUNT 7: MALICIOUS PROSECUTION

138.    The allegations contained in Paragraphs 1-95 herein are realleged and incorporated by reference, as fully set forth herein.

139.    Thompson committed the tort of malicious prosecution by seeking an Arrest Warrant against Gentry without probable cause, pursuing its enforcement, and zealously maintaining the action before its dismissal.

140.    Gentry incurred significant financial and emotional injuries as a result of Thompson's actions including, but not limited to, damage to his reputation, expenses incurred as a result of his defense, lost business opportunities, and psychological trauma.

## H. COUNT 8: GENERAL TORT LIABILITY

141.    The allegations contained in Paragraphs 1-95 herein are realleged and incorporated by reference, as fully set forth herein.

142.    Under Louisiana law, the fountainhead of tort liability is La. Civ. Code art. 2315, which provides "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

143.    Gentry has been damaged by the Defendants' tortious conduct hereinabove described.

144.    In addition to the above Counts, each of the Defendants is liable to repair the damages sustained by Gentry as a result of their tortious conduct.

## I. COUNT 9: VICARIOUS LIABILITY

145.    The allegations contained in Paragraphs 1-95 herein are realleged and incorporated by reference, as fully set forth herein.

146.    The City of New Orleans is vicariously liable for Defendant Thompson's tortious conduct (Counts 6-11 made pursuant to state law) identified in this Complaint because Defendant Thompson was acting within the course and scope of his employment as a member of the NOPD at the time she committed these wrongs.

147.    The City of New Orleans is vicariously liable for Defendant Gaines's tortious conduct (Counts 6-11 made pursuant to state law) identified in this Complaint because Defendant Gaines acting within the course and scope of his employment as a member of the NOPD at the time he committed these wrongs.

148.    The City of New Orleans is vicariously liable for Defendant Diaz's tortious conduct (Counts 6-1 1 made pursuant to state law) identified in this Complaint because Defendant Diaz was acting within the course and scope of his employment as a member of the NOPD at the time he committed these wrongs.

149.    The City of New Orleans is vicariously liable for Defendant Wood's tortious conduct, is vicariously liable for his tortious activity (Counts 6-11 made pursuant to state law) identified in this Complaint because he was acting within the course and scope of his employment as a member of the NOPD at the time he committed these wrongs.

## J. COUNT 10 : CIVIL RICO

150.    The allegations contained in Paragraphs 1-95 herein are realleged and incorporated

151.    Plaintiff herein asserts her right to a private cause of action under 18 U.S.C. Section 1962 (c) and (d).

152.    This complaint alleges, inter alia, violations of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § § 1961-1968, and is brought by Plaintiff Gentry in connection with a series of schemes, devised, conducted and/or participated in by the individual defendants (sometimes referred to as the "RICO Defendants" or "Enterprise"), each of whom participated in the enterprise. The individual RICO Defendants conducted or participated, directly or indirectly, in the conduct of the affairs on the Enterprise through a pattern of racketeering, and conspired to do so, all to the detriment of Plaintiff Daniel Gentry.

153.    During the relevant times set forth herein, the RICO Defendants conspired with one another to deny Plaintiff Daniel Gentry the freedom to access certain places within the City of New Orleans where Defendant Richard Carter was present, such as restaurants and close proximity to Gentry's home as well as being able to travel. The multifarious racketeering activities through which the broad objectives of the RICO Defendants were carried out through and consisted of a complex pattern of individual transactions and group of transactions.

154.    The Enterprise, operating from April 6th, 2024, to Present, managed the day-to-day in order to shield all Defendants from public scrutiny and local and federal oversight.

## VI. CONCLUSION

154.    The foregoing allegations present a disturbing pattern of misconduct, bias, and constitutional violations perpetrated by multiple members of the New Orleans Police Department and related officials. Daniel Gentry was repeatedly denied due process and subjected to malicious, false, and misleading representations in official police reports. These reports—drafted, approved, and disseminated by Defendants Thompson, Gaines, Alfonzo, Luster, Diaz, and others—mischaracterized Gentry's actions, omitted exculpatory evidence, and, upon information and belief, included fabricated statements attributed to Mr. Gentry. Furthermore, the failure of these officials to intervene during a credible threat of violence, the manipulation or withholding of body-worn camera footage, and the subsequent issuance of an arrest warrant based on false premises culminated in Gentry's unlawful arrest and pretrial detention under excessive bail conditions.

155.    The actions of the named officers and judicial actors, individually and collectively, demonstrate a reckless disregard for the truth, violation of established constitutional protections, and the misuse of state power under color of law. Gentry's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments were systematically ignored, resulting in unlawful deprivation of liberty and property, reputational harm, and emotional distress. Immediate review and redress are warranted to address these abuses and to prevent further erosion of constitutional safeguards within the criminal justice system of New Orleans.

## PRAYER FOR RELIEF

WHEREFORE, Daniel Gentry requests that the Defendants hereinabove named be cited to appear and answer, and that on final trial this Honorable Court:

1.  Find that Defendants the City of New Orleans, New Orleans Police Department, Calvin Thompson, Kimera Dufeal/Woods, Perrin Gaines, individually deprived Gentry of a civil right in violation of 42 U.S.C. 1983.

2.  Find that Defendants the City of New Orleans, New Orleans Police Department, Calvin Thompson, Kimera Dufeal/Woods, and Perrin Gaines,

3.  Find that Defendants the City of New Orleans, New Orleans Police Department, Calvin Thompson, Kimera Dufeal/Woods, and Perrin Gaines,

4.  Order the City of New Orleans and the NOPD to permanently remove from their records the false statements contained in NOPD Incident Reports No.

5.  Find that Defendant Thompson, assisted by Defendant Kimera Dufeal/Woods, Perrin Gaines, the NOPD, the City of New Orleans committed an abuse of process under Louisiana law and enter an award of damages in favor of Gentry;

6.  Find that Defendant Thompson, assisted by Defendant Kimera Dufeal/Woods, Perrin Gaines, the NOPD, the City of New Orleans committed an abuse of right under Louisiana law and enter an award of damages against them in favor of Gentry;

7.  Find that Defendant Thompson, assisted by Defendant Kimera Dufeal/Woods, Perrin Gaines committed intentional infliction of emotional distress against Gentry and enter an award of damages against them in favor of Gentry;

8.    Find that Defendant Thompson, assisted by Defendant Kimera Dufeal/Woods, Perrin Gaines committed malicious prosecution and entered an award of damages against him in favor of Gentry;

9.    Find that the Defendants are liable for their tortious conduct (Counts 6-11) under La. Civ. Code art. 2315 and enter an award of damages against them in favor of Plaintiff Gentry;

Find that the City of New Orleans is vicariously liable for the tortious conduct (Counts ------made pursuant to state law) of NOPD, Calvin Thompson, Kimera Dufeal/Woods, Perrin Gaines.

10.    For attorney's fees and other litigation costs incurred by the Plaintiff in this action to be allocated among the Defendants, pursuant to 42 U.S.C. 1983 and 1988, and 19 U.S.C. 2724(b)(3), and/or other statutory bases as the Court deems appropriate;

11.    Find that the Defendants participated in the Enterprise to violate Plaintiff's constitutionally protected civil rights.

12    For such other relief, equitable or otherwise, to which the Plaintiff may be entitled.

Respectfully Submitted:

**DANIEL GENTRY**
**5651 Red Maple**
**New Orleans, Louisiana 70129**
Dgentry626@yahoo.com
**Tel: 985.837.2193**