UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DANIEL GENTRY | CIVIL ACTION |
| VERSUS | NO. 25-1260 |
| CALVIN THOMPSON ET AL. | SECTION: "J"(3) |

## ORDER AND REASONS

Before the Court are Defendants' *Motion to Dismiss* **(Rec. Doc. 27)**, which is unopposed, and Plaintiff Daniel Gentry's *Motion for Leave to File First Amended Complaint* **(Rec. Doc. 42)**. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Mr. Gentry's motion for leave to file first amended complaint should be **DENIED**, and Defendants' motion to dismiss should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises largely from Plaintiff Daniel Gentry's attempt to evict a tenant from property that Mr. Gentry's family owns and he manages. In late March of 2024, the First City Court of the City of New Orleans rendered an eviction judgment in favor of Daniel Gentry and against his then-tenant, Jelon Stewart, at 7820 Henley Street in New Orleans. The judgment ordered Ms. Stewart to vacate the Henley Street property by March 27, 2024. On April 4, 2024, someone from the Office of the Constable contacted Mr. Gentry and arranged to meet him at the rental property the next day to execute the eviction judgment. According to Mr. Gentry's

complaint, when the deputy constables spoke with Ms. Stewart, she produced a rent receipt from March 1, 2024, which Mr. Gentry admitted that he had signed. However, Mr. Gentry notes that he had signed the receipt prior to being granted the judgment for possession/eviction. Mr. Gentry does not explain what happened immediately thereafter, but based on other evidence attached to the complaint, the deputies did not require Ms. Stewart to vacate Mr. Gentry's rental property on that occasion.

In response, Mr. Gentry requested that NOPD officers come to execute the eviction judgment the next day, on April 6, 2024. Mr. Gentry alleges that Officer Calvin Thompson and Sergeant Perrin Gaines arrived at the scene, along with Officer Alfonzo, whom Mr. Gentry did not name as a defendant in the lawsuit. Based on the NOPD incident report, Officer Thompson interviewed Ms. Stewart's son, Travell Williams, who reported that earlier that morning, he had noticed the electricity had been turned off at the property, and when he went outside, he saw that the tires on his mother's vehicle were flat. (Rec. Doc. 1-1, at 3). Mr. Williams also told Officer Thompson that he had observed Mr. Gentry sitting in his vehicle across the street from the rental property. *Id.*

Further, according to the incident report, Ms. Stewart explained that the deputy constables, who had come to the property the day before, did not evict her because a judge from Section C of the Orleans Parish Civil District Court had contacted them and allegedly informed the deputies that they could not evict Ms. Stewart because Mr. Gentry had accepted a rent payment from her. (Rec. Doc. 1-1, at 3). Ms. Stewart also claimed that she had a court hearing concerning the eviction

scheduled for the following Monday. *Id.* The incident report also includes Ms. Stewart's allegations that (1) she was "being constantly harassed by Mr. Gentry," (2) she believed Mr. Gentry had flattened her vehicle tires, and (3) she lived "in constant fear that Mr. Gentry may harm her family." *Id.* Mr. Gentry vehemently denies these allegations.

Also at the scene was Mr. Richard Carter, who was there to support Ms. Stewart. Mr. Gentry asserts that Mr. Carter had a firearm and threatened him, and that despite these alleged threats, the NOPD officers failed to intervene. Officer Thompson's report notes the following:

> Officer Thompson and Sergeant P. Gaines, while at the location observed Mr. Gentry get into an [sic] verbal argument with an unknown male subject later identified as Mr. Richard Carter (B/M DOB 7-1-1983).
>
> Mr. Carter stated Mr. Gentry was making intimidating facial gestures towards him. Mr. Carter stated to Mr. Gentry, "that he was not the one to play with." Mr. Carter began giving the address of his residence to Mr. Gentry, stating he is welcome to come by if he wants trouble. . . .
>
> . . . Mr. Gentry engaged in a verbal argument with Ms. Stewart and Mr. Williams, referring to her as a, "broke bitch who needs to pay her rent."

*Id.* According to the incident report, Officers Thompson and Alfonzo separated Mr. Gentry and Mr. Carter, and Sergeant Gaines advised that neither of the men would be arrested based on the "threatening comments made on scene," but that "if anything escalated past the argument on scene police action will be taken." *Id.* at 4. Again, Mr. Gentry refutes this version of events.

Escalation is precisely what appears to have happened next. This dispute between Mr. Carter and Mr. Gentry, and the NOPD Defendants' response thereto,

form the basis of this lawsuit. In a classic case of "he said, he said," Mr. Gentry claims that when he left the rental property, Mr. Carter pulled up next to his vehicle as he was driving and pointed a rifle at him. Mr. Gentry returned to the rental property and reported this incident to Officer Thompson. A little later, Mr. Carter called 911, and when Officer Thompson arrived, Mr. Carter told a different story. He reported that when Mr. Gentry saw him driving, he turned around in the middle of the road to follow Mr. Carter. When Mr. Carter arrived at his residence, he alleged that Mr. Gentry drove by pointing a handgun at him, at which point Mr. Carter said he aimed his firearm at Mr. Gentry. Based on these separate reports, arrest warrants for aggravated assault were issued for both Mr. Gentry and Mr. Carter.

A couple of months later, on June 17, 2024, NOPD officers arrested Mr. Gentry on the outstanding warrant for aggravated assault. When Mr. Gentry appeared for a bond hearing in Magistrate Court, Commissioner Sallah appointed an Orleans Parish Public Defender, Mr. Byrd, to represent Mr. Gentry, but Mr. Gentry objected. In his complaint, Gentry alleges that Mr. Byrd and an unidentified employee of Court Intervention Services "improperly obtained criminal history on Gentry, which included an arrest/conviction from 25 years ago in Jefferson Parish." (Rec. Doc. 1, at ¶ 94). Further, Mr. Gentry accuses Byrd of illegally disclosing this "private information" during the bail hearing. *Id.* When Mr. Gentry terminated Mr. Byrd as counsel and attempted to represent himself, he claims that Commissioner Sallah ordered that Mr. Gentry be removed from the courtroom. Based on these allegations, Mr. Gentry named Byrd and Sallah as defendants in the instant action.

Finally, the Orleans Parish District Attorney refused the charges against Mr. Gentry, and on June 18, 2025, Daniel Gentry brought the instant action against twenty-one defendants, including NOPD officers, Orleans Parish Magistrate Court officials, and the former Mayor LaToya Cantrell, among others. In January of 2026, after various issues with the execution of summonses had been resolved, the City of New Orleans filed the instant Rule 12(b)(6) motion to dismiss on behalf of the City Defendants. The Court later learned that Defendants had not served Mr. Gentry with this motion.

To complicate matters further, when the Court began to consider the City Defendants' motion, it discovered nine citations to hallucinated cases. In response, the Court held a hearing in March of 2026 at which the City Defendants were ordered to show cause why they should not be sanctioned. Mr. Gentry attended the hearing. In addition to imposing sanctions on two of the City Attorneys, the Court ordered Defendants to refile their Rule 12(b)(6) motion and the amended memorandum into the record, to serve Mr. Gentry with all filings, and to set the Rule 12(b)(6) motion for submission on April 29, 2026 so as to give Mr. Gentry thirty (30) days to file his opposition. (Rec. Doc. 24). Four months later, Mr. Gentry still has not complied with this Court order and has not filed a response to Defendant's motion to dismiss. However, Mr. Gentry has relentlessly filed other motions with the Court, most of which lack any basis in existing law.

On April 8, 2026, Mr. Gentry filed a notice of appeal concerning the Court's earlier order in which it had imposed sanctions on two of the City of New Orleans

attorneys. (Rec. Doc. 32). Although it was unclear what issue Mr. Gentry could validly appeal, the Court considered the instant matter stayed while the appeal was pending. The Fifth Circuit ultimately dismissed the appeal on July 24 for want of prosecution (Rec. Doc. 51), but during that time, Mr Gentry filed several motions with this Court. First, he filed an objection to one of the Court's orders from December 23, 2025, in which the Court granted Defendants an extension of time to file responsive pleadings, an extension which was mandated by Local Rule 7.8. Later, Mr. Gentry filed a document styled as amended objections (Rec. Doc. 36) and a motion to expedite consideration of the objections (Rec. Doc. 37). The Court overruled Mr. Gentry's objections in an order dated April 23, 2026, even though the case was still on appeal to the Fifth Circuit. (Rec. Doc. 38).

Mr. Gentry also filed a motion for leave to file a first amended complaint, which was 104 pages long, or 70 pages longer than his initial complaint, and then a motion to amend or correct his motion for leave to file, all while his appeal was pending. (Rec. Docs. 42, 45). Shortly after the Fifth Circuit dismissed Mr. Gentry's appeal, he began filing motions to vacate the Court's previous order granting Defendants an extension of time to plead, an issue which the Court had previously ruled on, and two motions for Rule 11 contempt sanctions and disciplinary action based on arguments that had been resolved pursuant to the show cause hearing in March of 2026. (Rec. Docs. 52, 53, 55). Mr. Gentry even sought to have the Clerk of Court for the Eastern District of Louisiana sanctioned because he alleged that "the Clerk 'wrongfully altered [a docket entry]' despite 'knowledge of its falsity, false statement, [and] false representation of

a material fact.'" (Rec. Doc. 55-2, at ¶ 16). Mr. Gentry's pattern of relentlessly filing motions that lack merit has proved a drain on the Court's time, energy, and resources. More importantly, despite these meritless motions and filings, Mr. Gentry failed to file the one thing the Court ordered him to file: an opposition to Defendants' Rule 12(b)(6) motion to dismiss. Based on Mr. Gentry's failure to comply with the Court order, the Court could grant Defendants' unopposed motion without further explanation. However, because Mr. Gentry is a *pro se* litigant, the Court will explain its reasoning below.

The Court has original jurisdiction over Plaintiff's § 1983 claims and civil RICO claim pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining state-law claims. Defendants now move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), averring that Plaintiff's claims lack merit and that Defendants have qualified immunity.

## LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

**B. Qualified Immunity**

Qualified immunity is an affirmative defense that protects public officials sued for violations of constitutional rights. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)). The qualified immunity defense is intended to provide protection to "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). For this reason, "courts will not deny immunity unless 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

When a defendant raises qualified immunity as a defense, the plaintiff bears the burden to demonstrate that the defense does not apply. *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021). "A state official is entitled to qualified immunity unless

(1) the plaintiff alleged a violation of a constitutional right; and (2) that right was 'clearly established' at the time of the alleged violation." *Stapleton v. Lozano*, 125 F.4th 743, 748–49 (5th Cir. 2025) (citing *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021)). Typically, courts first consider the threshold issue of whether a plaintiff has alleged a constitutional violation. *Id.* at 749 (citing *Mayfield v. Currie*, 976 F.3d 482, 493 (5th Cir. 2020) (Willett, J., concurring)). When a court finds that the plaintiff has failed to allege a constitutional violation, the court need not consider the second prong, which is whether that right was clearly established at the time of the alleged violation.

## DISCUSSION

### A. Section 1983 Claim for Failure to Intervene

First, Mr. Gentry brings a claim under 42 U.S.C. § 1983 against Defendants Thompson, Gaines, Luster, Diaz, the New Orleans Police Department ("NOPD"), the City of New Orleans, and Woods, along with Sallah, Byrd, and Court Intervention Services who have not been served, for their alleged failure to intervene in the private dispute between Mr. Gentry and Richard Carter. In their motion to dismiss, Defendants argue that in Count One, Mr. Gentry fails to assert a constitutional violation, and therefore, he has failed to state a claim upon which relief may be granted, and furthermore, that Defendants are entitled to qualified immunity.

Defendants are correct that Mr. Gentry's § 1983 claim for failure to intervene fails as a matter of law. Section 1983 allows a plaintiff to bring a cause of action against a defendant who, acting under color of state law, violated one of the plaintiff's

constitutional rights. *See* 42 U.S.C. § 1983. To state a viable claim under § 1983, a plaintiff must establish two required elements as a threshold matter: (1) "the violation of a right secured by the Constitution and laws of the United States," and (2) "that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

Here, Mr. Gentry cannot clear the first hurdle and thus has not stated a claim upon which relief can be granted. Specifically, Defendants' alleged failure to intervene in a private dispute did not deprive Mr. Gentry of a constitutionally secured right, despite Mr. Gentry's conclusory allegation that "Defendant Officer Thompson had a clear duty to intervene" in the private dispute between Mr. Carter and Mr. Gentry. (Rec. Doc. 1, at ¶ 99). While Mr. Gentry framed Officer Thompson's failure to intervene as an equal protection violation, courts typically analyze this type of claim under the Due Process Clause. Because courts "hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints," *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016), this Court will analyze Mr. Gentry's § 1983 claim under the Due Process Clause, even though he only referred to the Equal Protection Clause in his complaint.

In *DeShaney v. Winnebago County Department of Social Services*, the Supreme Court held that the "Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." 489 U.S. 189, 196 (1989) (citations omitted). In other words, police officers have no

affirmative duty to intervene in a private dispute, and "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

In *Rogers v. Euless Police Department*, the Fifth Circuit decided an appeal involving similar claims to those Mr. Gentry makes in his complaint. 107 F. App'x 430, 431 (5th Cir. 2004). In that case, the plaintiff, Mr. Rogers, had previously filed multiple police reports with the Euless, Texas Police Department about a particular individual. *Id.* Ultimately, this individual assaulted Mr. Rogers, at which point Rogers brought a § 1983 claim against the Euless Police Department for its failure to act on his reports. *Id.* The Fifth Circuit affirmed the district court's dismissal of Rogers's § 1983 claim for failure to state a claim on which relief may be granted. *Id.* More pointedly, the Fifth Circuit concluded that the appeal was "without arguable merit" and "frivolous" and explained that "local governments have no general constitutional duty to protect individuals from private violence outside of the prison context." *Id.* (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 583–84 (5th Cir. 2001)).

As the Fifth Circuit alluded to in *Rogers*, only one narrow exception exists to the rule that state agents have no affirmative duty to intervene in a private dispute: the state and its agents, such as law enforcement officers, have an affirmative duty to protect an individual from private violence only "when the state has a special relationship with the person." *Piotrowski*, 237 F.3d at 584. Moreover, the Fifth Circuit has established that a "'special relationship' arises between a person and the state

*only* when this person is involuntarily confined against his will through the affirmative exercise of state power." *Walton v. Alexander*, 44 F.3d 1297, 1306 (5th Cir. 1995) (emphasis added). The Fifth Circuit has also held that "the state has no duty to protect nor liability from failing to protect a person under the due process clause of the Fourteenth Amendment from violence at the hands of a private actor." *Id.*

The same principle holds true in this case. Defendants, particularly the NOPD officers on the scene, had no affirmative duty to intervene in the private dispute between Mr. Gentry and Mr. Carter because during this dispute, Mr. Gentry was in no way involuntarily confined through the affirmative exercise of state power. Therefore, as a matter of law, the NOPD Defendants did not violate Mr. Gentry's rights under the Due Process Clause, or under any other constitutional provision for that matter. Because Mr. Gentry has not alleged a deprivation of a right secured by the Constitution or laws of the United States, he has failed to state a § 1983 claim upon which relief may be granted. For the same reason, Defendants are entitled to qualified immunity on this failure to intervene claim.

**B. Equal Protection Claim Arising Under the Fourteenth Amendment**

In his original complaint, Mr. Gentry claimed that by failing to intervene, the NOPD Defendants violated his Fourteenth Amendment right to equal protection. As explained above, courts typically would not analyze a failure to intervene claim under the Fourteenth Amendment's Equal Protection Clause, but the Court will construe Mr. Gentry's complaint liberally and analyze a general equal protection claim based on the facts Mr. Gentry alleged.

The Equal Protection Clause of the Fourteenth Amendment protects individuals from state action that results in the differential treatment of similarly situated individuals. U.S. Const. amend. XIV, § 1; *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Accordingly, "an equal protection claim depends on either identifying a class or showing that the aggrieved party is a 'class of one.'" *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015) (citations omitted). Consequently, when the Court liberally construes Mr. Gentry's complaint, it appears that he has attempted to assert a "class of one" equal protection claim. Therefore, to survive Defendants' Rule 12(b)(6) motion to dismiss, Plaintiff must have alleged facts which plausibly state that (1) he "was treated differently from others similarly situated and (2) there was no rational basis for the disparate treatment." *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007) (citing *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

In this case, Plaintiff does not explain how the NOPD Defendants treated him and Richard Carter differently or unequally. In fact, based on the police reports that Mr. Gentry attached to his complaint, it appears that law enforcement treated Mr. Gentry and Mr. Carter almost identically. Defendant Thompson reported on the verbal altercation between Mr. Gentry and Mr. Carter by objectively relaying what both men said and did. Further, after Mr. Gentry flagged Defendant Thompson down to report that Mr. Carter pointed a rifle at him while driving, Officer Thompson investigated to find out where Mr. Carter resided and then went to Mr. Carter's

residence to interview him. Officer Thompson also executed a search warrant at Mr. Carter's residence, and an arrest warrant was issued for him.

Similarly, Officer Thompson sought an arrest warrant for Mr. Gentry based on the statement Mr. Carter gave him after calling 911. Accepting all of Mr. Gentry's claims as true and drawing all inferences in his favor, the NOPD Defendants appear to have treated Mr. Carter and Mr. Gentry equally. Because Mr. Gentry has not alleged sufficient facts to demonstrate that he was treated differently from Mr. Carter, he has failed to plead an equal protection claim that is plausible on its face.

**C. Fourth Amendment Claim**

Next, Mr. Gentry brings a § 1983 claim for violation of his Fourth Amendment rights, specifically his right to be free from unreasonable searches and seizures. Additionally, Mr. Gentry alleges that the NOPD Defendants, namely Thompson, improperly obtained the arrest warrant "by making false statements and means of omissions that created a falsehood in the warrant affidavit." (Rec. Doc. 1, at ¶ 102).

To state a claim for false arrest, Mr. Gentry must allege facts that show the NOPD Defendants lacked probable cause to arrest him. "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000) (citation omitted). Furthermore, "evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because 'probable cause requires only a probability or

substantial chance of criminal activity, not an actual showing of such activity.'" *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (citation omitted). As such, an officer's own uncontradicted testimony regarding the occurrence of an arrestable violation can by itself support a finding of probable cause, even in the face of plaintiff's denial of that violation. *See id.*

Moreover, the qualified immunity defense "protects state officials from civil suit and liability when they could have reasonably believed that their actions were legal." *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024) (citation omitted). In regard to a false arrest claim, even "if officers of reasonable competence *could* disagree on whether or not there was probable cause to arrest a defendant, immunity should be recognized." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citation omitted).

From what the Court can gather from Mr. Gentry's complaint and the exhibits attached thereto, Defendant Thompson submitted affidavits, signed by his supervisor Kimera Woods, to Appointed M3 Commissioner Joyce Sallah seeking two arrest warrants: one for Richard Carter and the other for Plaintiff Daniel Gentry. In the affidavit for an arrest warrant for Richard Carter, Officer Thompson included the statement he had received from Mr. Gentry, and he included Richard Carter's statement in the affidavit for the arrest warrant for Mr. Gentry. In Mr. Gentry's case, Officer Thompson attested under oath that Richard Carter told him that Mr. Gentry had turned around in the middle of Hayne Boulevard to follow Mr. Carter's vehicle and later drove past Mr. Carter's residence, pointing a handgun at him.

Similarly, Officer Thompson relied on Mr. Gentry's statement that Mr. Carter had driven past him pointing a rifle as probable cause for an arrest warrant for Mr. Carter. Commissioner Sallah found probable cause for both arrest warrants. As explained above, "probable cause requires only a probability or substantial chance of criminal activity," and Carter's statement that Gentry followed him, drove by his residence, and pointed a firearm at him gave Officer Thompson reason to believe that there was a probability or substantial chance that Mr. Gentry had engaged in criminal activity.

Because Officer Thompson had probable cause to believe that Mr. Gentry had committed an offense, he could have arrested Mr. Gentry without a warrant under the Constitution. *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) (citing *Adams v. Williams*, 407 U.S. 143, 148–49, (1972)). But, rather than arresting Mr. Gentry based only on probable cause, Officer Thompson obtained a warrant for Mr. Gentry's arrest for aggravated assault based on his affidavit, which was reviewed by Commissioner Sallah. The Supreme Court has established that an affidavit supporting a search warrant, or a warrant for arrest, is presumed valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Moreover, the "validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *DeFillippo*, 443 U.S. at 36. In this case, the fact that the Orleans Parish District Attorney ultimately refused the charges does not undermine the constitutionality of the arrest.

Furthermore, the Court finds that Mr. Gentry has failed to state a plausible claim that Defendants falsified the affidavit used to obtain the arrest warrant. Again, a presumption of validity attaches to an affidavit used to support a warrant. *Franks*, 438 U.S. at 171. However, "an officer who recklessly or intentionally contribute[s] misleading statements or omissions to a warrant affidavit violates the arrestee's constitutional rights." *Hughes v. Garcia*, 100 F.4th 611, 620 (5th Cir. 2024). A claim against an officer for this type of violation is usually referred to as a *Franks* claim because of the Supreme Court's decision in *Franks v. Delaware*.

Generally, a law enforcement officer cannot be held liable for an unlawful arrest when the officer has obtained a warrant from a neutral magistrate—this is known as the independent intermediary doctrine. *See Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021) (citing *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)). In *Franks* and subsequent cases, however, courts have recognized an exception to this doctrine: when a law enforcement officer taints the neutral intermediary's determination that probable cause exists by including intentionally or recklessly false statements or omissions in the warrant affidavit, that officer can face liability for a constitutional violation. *Id.*

To prevail on a *Franks* claim, a plaintiff must demonstrate that "(1) the affiant, in support of the warrant, include[d] 'a false statement [made] knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Thompson v. McGehee*, 183 F.4th 353, 363 (5th Cir. 2026) (quoting *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir.

2018)). The inclusion of a false statement in an affidavit does not automatically lead to liability. Instead, the false statement must be necessary to the independent intermediary's finding of probable cause. When evaluating whether an allegedly false statement or omission is "'necessary to the finding of probable cause,' the court must consider the affidavit as if those false statements were removed and consider whether the 'remaining content' would still support a probable cause finding." *Garcia v. Orta*, 47 F.4th 343, 352 (5th Cir. 2022) (citing *Franks*, 438 U.S. at 156).

In this case, Mr. Gentry's initial complaint consists solely of conclusory statements. He alleges that Defendants relied on deliberate falsehoods and had a reckless disregard for the truth in completing the incident reports and affidavit for the arrest warrant, but he does not offer any proof to substantiate these claims other than his own self-serving claims. These conclusory allegations are not sufficient to overcome the presumption of the affidavit's validity. In his proposed First Amended Complaint ("FAC"), however, Mr. Gentry specifies several allegedly false statements, omissions, and inconsistencies which he claims Officer Thompson included in the incident report from April 6, 2024. Even accepting these allegations as true and drawing all inferences in Mr. Gentry's favor, these allegations are irrelevant to a *Franks* claim. Mr. Gentry primarily points to allegedly false statements in the incident report, but Commissioner Sallah based her finding of probable cause not on the incident report but on Officer Thompson's affidavit.

To give Mr. Gentry the benefit of the doubt, the Court will consider the allegedly false statements in the affidavit that he identifies in the FAC. First, the

section of the affidavit that relates to probable cause for Mr. Gentry's arrest reads as follows:

> On Saturday April 6, 2024, at 11:45 AM, Police Officer Calvin Thompson, manning Unit 719B of the Seventh District, received a call via New Orleans Police Department Dispatch, to investigate a 21 which was later determined to be related to a previous 37, at [redacted] Means Avenue.
>
> Upon arrival Officer Thompson interviewed Mr. Richard Carter (B/M DOB 7-1-1983) who stated he was traveling southbound on Hayne Boulevard to his residence at [redacted] Means Avenue, when he observed Mr. Daniel Gentry turning around in the middle of Hayne and began following him. The victim stated he made a right turn on Means Aveue [sic] and pulled up to his residence, as he exited the vehicle, he observed the wanted subject in a dark colored Infinity SUV, drive past him pointing a black handgun at him. The victim stated he pointed his firearm in the direction of the wanted subject driving past him. The victim stated he was in fear for his life that's the reason he pointed his firearm at the wanted subject. The victim stated after the incident he was outside talking to his neighbor, about thirty minutes later he observed the wanted subject driving up Means Avenue at a high-rate speed ducking down in the vehicle.

(Rec. Doc. 1-2, at 13).

In his proposed amended complaint, Mr. Gentry alleges that Officer Thompson included the following false statements in the above excerpt from the affidavit.

(1) Gentry claims that "Richard Carter said he was at the store when he saw Mr. Gentry drive past." He goes on to say that Officer Thompson falsified this account by attesting that Richard Carter was traveling southbound on Hayne Boulevard when he saw Mr. Gentry, and Gentry alleges that "[t]his statement was made with malice and reckless disregard for the truth." (Rec. Doc. 45-2, at ¶ 96).

(2) Mr. Gentry alleges that he observed Mr. Carter driving behind him, which is when Mr. Gentry claims that he turned his vehicle around because he did not want to lead Mr. Carter to his residence.

(3) Mr. Gentry argues that he could not have been the individual whom Mr. Carter saw speeding past Mr. Carter's residence and ducking down based on timing. He claims he would have been with Officer Thompson at the Seventh District station from approximately 9:53 a.m. until 10:27 a.m., including travel time. He also alleges that Mr. Carter "purportedly called 911 at 10:05 a.m." *Id.* at ¶ 98. However, the Court does not know where this information comes from because Officer Thompson's incident report and affidavit both attest that Officer Thompson was notified of Mr. Carter's 911 call, to which he responded, at 11:45 a.m.

To conduct the *Franks* analysis, the Court will perform "a reconstructed affidavit analysis," in which the "essential inquiry is whether 'there remains sufficient content in the warrant affidavit to support a finding of probable cause' *after* the 'material that is the subject of the alleged falsity or reckless disregard is set to one side.'" *Thompson*, 183 F.4th at 368. "Assessing whether an allegedly false statement is 'necessary to the finding of probable cause' turns on what *would* establish probable cause for a violation of the statute at issue." *Id.* at 363. In this case, Mr. Gentry was arrested under a warrant for one count of aggravated assault, or a violation of Louisiana Revised Statutes Section 14:37. Under Louisiana law, an assault is "an attempt to commit a battery, or the intentional placing of another in

reasonable apprehension of receiving a battery," La. Stat. Ann. § 14:36, and Louisiana Revised Statutes Section 33 defines battery as "the intentional use of force or violence upon the person of another . . . .," La. Stat. Ann. § 14:33. Aggravated assault "is an assault committed with a dangerous weapon." La. Stat. Ann. § 14:37. Therefore, the Court must determine, after setting aside the statements that Mr. Gentry alleges are false and/or inconsistent, whether a reasonable police officer would have believed that Mr. Gentry had committed aggravated assault.

Below is what Officer Thompson's affidavit would have included after the alleged falsehoods and inconsistencies were removed.

> On Saturday April 6, 2024, at 11:45 AM, Police Officer Calvin Thompson, manning Unit 719B of the Seventh District, received a call via New Orleans Police Department Dispatch, to investigate a 21 which was later determined to be related to a previous 37, at [redacted] Means Avenue.
>
> Upon arrival Officer Thompson interviewed Mr. Richard Carter (B/M DOB 7-1-1983) who stated ~~he was traveling southbound on Hayne Boulevard to his residence at [redacted] Means Avenue, when~~ he observed Mr. Daniel Gentry turning around in the middle of Hayne ~~and began following him~~. The victim stated he made a right turn on Means Aveue [sic] and pulled up to his residence, as he exited the vehicle, he observed the wanted subject in a dark colored Infinity SUV, drive past him pointing a black handgun at him. The victim stated he pointed his firearm in the direction of the wanted subject driving past him. The victim stated he was in fear for his life that's the reason he pointed his firearm at the wanted subject. The victim stated after the incident he was outside talking to his neighbor, about thirty minutes later he observed the wanted subject driving up Means Avenue at a high-rate speed ducking down in the vehicle.

Setting aside the statements that Mr. Gentry claims are false, the affidavit still contains the information that would support a probable cause finding: an alleged victim's statement that Mr. Gentry drove past Mr. Carter's home and pointed a

handgun at him. Pointing a handgun at a purported victim constitutes "the intentional placing of another in reasonable apprehension of receiving a battery," which is the intentional use of force or violence upon another person. Because this offense was allegedly committed with a dangerous weapon—the handgun—the affidavit contains all elements of the suspected crime. Therefore, sufficient information remains in the warrant affidavit to indicate that a reasonable police officer could believe that it was probable that Mr. Gentry had committed a crime, specifically aggravated assault.

**D. Civil Racketeering Influenced and Corrupt Organizations Act Claim**

Mr. Gentry brings his final federal claim against Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). RICO statute 18 U.S.C. § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). In accord with the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985), the Fifth Circuit has made clear that "a violation of § 1962(c) 'requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Montesano v. Seafirst Com. Corp.*, 818 F.2d 423, 424 (5th Cir. 1987) (quoting *Sedima*, 473 U.S. at 496). The RICO statutory scheme defines a "pattern of racketeering activity" as requiring "*at least two acts* of racketeering activity." 18 U.S.C. § 1961(5) (emphasis added).

In his complaint, Mr. Gentry alleges that "the RICO Defendants conspired with one another to deny Plaintiff Daniel Gentry the freedom to access certain places within the City of New Orleans where Defendant Richard Carter was present," and that the "multifarious racketeering activities through which the broad objectives of the RICO Defendants were carried out through [sic] and consisted of a complex pattern of individual transactions and group of transactions." (Rec. Doc. 1, at ¶ 153). These allegations are conclusory and lack factual substantiation. Mr. Gentry does not explain which two acts of racketeering activity he believes Defendants engaged in, nor has he alleged any specific facts to support this claim. Accordingly, Mr. Gentry has failed to state a civil RICO claim that is plausible on its face.

**E. Mr. Gentry's Motion for Leave to File First Amended Complaint**

The Court has carefully reviewed and considered the proposed first amended complaint that Mr. Gentry filed with his motion for leave to file. (Rec. Doc. 45). The proposed amended complaint is significantly longer than the initial complaint (by 70 pages), but for the most part, the substance remains the same. Most importantly, the Court does not find that the proposed amended complaint remedies any of the legal deficiencies discussed above. When considering a motion to dismiss, a district court should freely grant leave to amend the complaint unless amendment would be futile. *See, e.g.*, *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)).

Mr. Gentry's proposed amended complaint is futile because it would still fail to survive a Rule 12(b)(6) motion, based not only on his failure to state claims upon which relief may be granted, but also because Defendants are entitled to qualified immunity. Moreover, the Court finds that further amendment would also be futile. Accordingly, Mr. Gentry's motion for leave to file first amended complaint should be denied.

**F. Remaining State-Law Claims**

The Court concludes that all of Plaintiff's claims under federal law should be dismissed; therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that *Defendants' Motion to Dismiss* **(Rec. Doc. 27)** is **GRANTED**, and that Plaintiff Daniel Gentry's federal claims against all Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's state law claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this 2nd day of September, 2026.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE